THE CHICAGO COTTAGE ORGAN COMPANY, Appellant, v. MRS. NETTIE CALDWELL.

**Practice on Appeal:** REVIEW OF CONFLICTING EVIDENCE. In an action on a written contract for the purchase of a piano, where defendant had every opportunity to read it, and a portion of it was read to her, and the balance explained, and she denies having received the piano, in the face of conclusive evidence to the contrary, a judgment in her favor will be set aside, where by the charge of the court it is the law of the case that defendant must fail unless she was prevented from reading the contract.

SAME. A verdict will be set aside on appeal if it be against manifest justice, though it rest on conflicting evidence.

*Appeal from Page District Court.*—Hon. A. B. Thor-
nell, Judge.

## Monday, May 20, 1895.

Action on a written contract for the purchase
price of a piano. Trial to a jury. Verdict and judg-
ment for defendant. Plaintiff appeals.—*Reversed.*

*T. E. Clark* for appellant.

*Henry J. Baird* for appellee.

Kinne, J.—I.   The plaintiff brings its action upon
the following contract: "Contract.  Chicago Cottage
Organ Company is not responsible for any verbal or
written contract or promise, other than written or
printed on the face of this contract. July 29, 1894.
For value received, I, the undersigned, residing in Mal-
vern, county of Mills and state of Iowa, promise to
pay to the order of the Chicago Cottage Organ Com-
pany four hundred and no hundredths dollars, at their
office in Chicago, Illinois, as follows:  One Packard
organ, at one hundred dollars ($100.00), and balance of
three hundred dollars ($300.00) in payments as follows:
$75.00 December 15, and seventy-five dollars every
three months, until said three hundred dollars ($300.00)
is paid in full, with interest on each payment at the rate
of eight per cent. per annum from the date hereof until
fully paid, with exchange, and a reasonable attorney's
fee, if this note is placed in the hands of an attorney
for collection.  To secure the payment of the sums of
money in the foregoing note contracted to be paid,
together with interest, exchange, and attorney's fees
as therein provided, I, the undersigned, hereby mort-
gage to the Chicago Cottage Organ Company one piano
made by Schubert Piano Company, No. 8,989, style 18,

being the property sold by said Chicago Cottage Organ
Company to me, in part payment for which the foregoing
note is given. And it is agreed that in case default is
made in the payment of any installment of said note
at the time and place therein mentioned, or if the
undersigned shall sell or incumber or remove the prop-
erty above described, or any part thereof, from said
town or county above mentioned, without the written
consent of the Chicago Cottage Organ Company, or
whenever said Cottage Organ Company or assigns may
so elect, the said Cottage Organ Company, or their
agent or assigns, shall have the right to take pos-
session of said property, wherever found, and proceed
to sell the same at public sale as by statute in such
cases provided, and apply the proceeds of said sale to
the payment of the sums mentioned in the foregoing
note then remaining unpaid, whether the same be due
or not, together with the interest thereon, and all costs
pertaining to the taking, keeping, advertising, and
selling of said property, and a reasonable attorney's
fee. And it is further agreed that in case said prop-
erty does not sell for an amount sufficient to pay said
several sums, with interest, costs, and attorney's fee,
as aforesaid, then the undersigned will pay the defi-
ciency on demand. Miss Nettie Donner. [Seal.] Wit-
nessed by J. W. Foulks. Read the above before sign-
ing." It is averred that defendant failed to perform
said contract; that the note is due and unpaid; and
that defendant failed to deliver the organ on demand.
It is also averred that the said Nettie Donner has inter-
married with one Caldwell. The defendant answered,
admitting the signing of the contract, and that nothing
had been paid thereon. She pleads that her signature
to said contract, and the contract itself, were obtained
from her by fraud, deception, misrepresentation, duress,
and other false devices; that she made a contract with

plaintiff's agent whereby she was to receive a Schubert piano, No. 8,989, style 18, on trial, to be kept by her and purchased provided she was satisfied with the same after trial.   She avers that the agent pretended to put the terms of said oral agreement in writing in the note and contract in suit, and represented to her that he had done so; that she did not read the contract and note before signing it, and was not permitted to do so by plaintiff's agent; that they wrote the false contract in suit, and pretended to read it to her, and did read it to her as though she was receiving the piano on trial in accordance with the real agreement; that she took the contract, and began to read it, when the agent took it out of her hand, told her he was in a hurry to catch a train, and could read it for her, and read it wrong. She avers she knew one of the agents well, and had full confidence in him, and signed the paper relying upon the truthfulness of the statements of plaintiff's agent; that she was only eighteen years old, and without business experience; that she did not know the contents of the paper, and that the note and contract was without consideration; that the piano was never delivered to her.   Plaintiff, in reply, denies all of the allegations of the answer.   Avers that it was verbally agreed that the piano should be delivered at the home of defendant's mother, where defendant resided; that the piano sold defendant had before that time been examined by her, and was the one which was sent to the home of defendant's mother, and left in the house, and has been kept by defendant ever since; that, if the number does not agree with the number in the contract, it is due to a clerical error.   At the conclusion of defendant's evidence plaintiff moved for a judgment in its favor, which motion was overruled.   The jury found for defendant.   The court overruled plaintiff's motion for a new trial, and entered judgment on the verdict.

II. It is contended that the verdict is against the evidence, the result of passion and prejudice, and contrary to the court's charge, and that the court erred in overruling plaintiff's motion to direct a verdict for it. This is an action upon a written contract, and the defense, in brief, is that it was obtained by fraud. We must say that, after a careful consideration of all of the evidence, we conclude that the defense pleaded was not established by the evidence. Defendant avers that the contract was procured by duress. There is not a particle of evidence to sustain this allegation. She avers that the contract as made was that she was to receive the piano, and to try it, and to purchase it if she liked it; that it was a conditional purchase. True, she so testifies, but the evidence very satisfactorily shows that such was not the fact. She claims that the contract was obtained by fraud, deception, and misrepresentation practiced upon her by plaintiff's agents; that she did not know she was signing such a contract, and that the agents did not read the contents of the paper correctly. Touching the circumstances surrounding the signing of the contract, the defendant testified as follows: "I was near by when he was writing it. I was not looking over his shoulder when he was writing. I was right close by. Did not see what he was writing. I could have gone and seen what he was writing. I did not try. I had confidence in him. Question. He told you certain things were going in there, and you did not take any effort to find out, did you? Answer. No, sir. Question. You did not make any effort to read it, did you? Answer. No. sir. Question. This laid before you just as it does now, didn't it? This instrument laid before you? Answer. Yes, sir. Question. You sat there for some moments? Answer. Yes, sir. I was not looking at him. I can read the English language.

I can understand ordinary language, and this was in large print. Yes, sir. 'For value received I promise to pay.' Yes, sir. There was nothing to keep me from seeing it. I looked right down at it. I was about to sign it. When they laid the paper down before me they didn't use any means to keep me from reading it, nor did they before. They laid it down for me to sign, stepped back, and I sat down at the desk. I took his seat when he quit writing. I looked at it. I could have read it. I did not try to read it. I made no effort whatever to read it. I simply relied altogether on what they told me. I made no effort whatever to read or try to get to read it, nor asked him to let me read it. After I signed it, I left it lying where it was." She claims that after it was signed it was handed her to read, but before she had finished reading it the agent took it and read part of it incorrectly. She admits that after that she did not ask to see or read it, and that she asked no questions about it. The evidence of two witnesses is to the effect that when defendant sat down to sign the contract she appeared to be reading it; that the contract as written was exactly as was agreed between the parties; that the note part of the contract was read to defendant. She was told that the balance of it was a mortgage on the piano for plaintiff's security. The court instructed the jury, in substance, that as it appeared without conflict that the defendant had reached her majority, and could read and write and understand the terms and conditions of the contract, she was bound to exercise reasonable care and prudence to inform herself as to its contents, and that it would not be sufficient to show that defendant neglected to read the contract, and that plaintiff's agent misrepresented its contents to her; that it must appear that she was prevented from reading it, or induced not to

read it, by reason of artifice or misrepresentation made for the purpose, and that such artifice and misrepresentation was of such character as would have misled and induced a person of ordinary prudence, placed under like circumstances, to withhold from reading the contract, and rely on the representations made, and that she was deceived and misled by such artifice and misrepresentations. The evidence is conclusive that defendant was not prevented from reading the contract. The only question is, was she misled by plaintiff's agents, and induced not to read it, and rely upon their statements? Against her claim is that of two witnesses and the contract itself, and in our judgment, her own subsequent conduct, which we cannot set out in detail; her denial that the piano was ever delivered, in face of facts which are conclusive that it was; the fact that the morning the piano was to be delivered at her mother's house she sent plaintiff's agent a note not to bring it, because her mother told her not to take it, and that that was the reason she refused it; that in the meantime she had bought another piano. These and many other facts tend strongly to show that it was nothing in the contract, or that had not been included therein, which moved her to act as she did, but the claimed fraud and misrepresentation was an after thought, born of a desire to please her mother's fancy. We think the motion to direct a verdict for the plaintiff should have been sustained. The motion for a new trial should have been granted. We know how reluctant trial judges are to interfere to set aside verdicts; yet, when a plain case is presented where that right should be exercised, trial judges should not hesitate to act. It is not the practice of this court to disturb verdicts when the evidence is conflicting, but it seems to us this is a case where a manifest injustice would be

done by permitting this verdict to stand. The evidence relied upon to create a conflict, as against the contract and plaintiff's witnesses, is unsatisfactory, and in many respects will not stand the test of examination. Defendant's evidence is in many respects contradictory. We do not think that a solemn written contract should be set aside on such a feeble showing of misrepresentation as appears in this case. The evidence of defendant which we have set out shows that she had ample opportunity to read the contract, and we think all of the evidence shows that that part of the contract which was in the form of a note and obligation of defendant to pay for the piano was read to her. For the purposes of this case the instructions of the court must be treated as correct, and under them and the evidence there was no warrant for the verdict. We think the judgment below should be *reversed.*